AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio



| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.    2:20 mj 088 |
| Premises located at 3573 Glorious Road Columbus, Ohio 43204 | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. 841, 846 | Possession with Intent to Distribute Controlled Substances/Conspiracy |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher Cadogan, SA Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  Feb. 10, 2020

City and state:  Columbus, Ohio

_____
*Judge's signature*

KIMBERLY A. JOLSON, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

The TARGET LOCATION is the premises identified as 3573 Glorious Road, Columbus, Ohio 43204. The TARGET LOCATION is a yellow single-story, single family residence, located on the south side of Glorious Road, one house removed from the intersection of Josephine Avenue and Glorious Road. The front door of the house faces north. The building is identified by the numerals "3573" attached to the building on the north side, the side that faces Glorious Road. The backyard is fenced and contains a shed.

**ATTACHMENT B**

The evidence to be searched for and seized is:

A.      Heroin and any other controlled substances;

B.      Documents and other items tending to show dominion and control over the TARGET LOCATION, including, but not limited to, bills or other business-related documents, correspondence, and photographs;

C.      Documents or other items tending to identify co-conspirators and sources, including, but not limited to, letters, notes, memoranda, photographs, address and phone books, maps, organizers, or lists of names;

D.      Items commonly used to facilitate drug trafficking, such as firearms, ammunition, cellular telephones, pay/owe sheets, packaging materials, "cut", scales, and grinders;

E.      Likely proceeds of drug trafficking, such as U.S. currency and other negotiable instruments; and

F.      Documents and other items tending to establish or hide the whereabouts of proceeds from drug trafficking, such as safes, keys to other locations, and financial records.

## AFFIDAVIT

I, Christopher Cadogan, being first duly sworn, hereby depose and state as follows:

### EXPERIENCE OF SPECIAL AGENT

1.      I am a Special Agent of the United States Drug Enforcement Administration (DEA), and have been so employed for approximately twenty-three years. I am currently assigned to the DEA's Columbus District Office, General Enforcement Group Two. This is a federal drug task force currently consisting of narcotics investigators from the DEA, Ohio State Highway Patrol (OSP), Columbus Police Department (CPD), Franklin County Sheriff's Office (FCSO), Upper Arlington Police Department, and the Westerville Police Department. This task force specializes in investigations targeting individuals and organizations that are involved in the distribution of methamphetamine, cocaine, heroin, and fentanyl. This task force is focused primarily on Mexican Drug Trafficking Organizations involved in the distribution of heroin and fentanyl in central Ohio. Prior to being employed by the DEA, I was employed as a United States Border Patrol Agent for approximately two (2) and one-half years. I have been a federal agent with the authority to investigate and make arrests for federal narcotics violations for approximately twenty-five years. I have received specialized DEA training in narcotics investigations. I have participated in hundreds of criminal investigations involving the manufacture, packaging, and distribution of methamphetamine, cocaine, and heroin.

### PURPOSE OF AFFIDAVIT

2.      This affidavit is made in support of an application for a warrant to search and seize evidence from the premises identified as **3573 Glorious Road in Columbus, Ohio 43204**. The premises is a yellow single-story, single family residence, located on the south side of Glorious Road, one house removed from the intersection of Josephine Avenue and Glorious Road. The

front door of the house faces north. The building is identified by the numerals "3573" attached to the building on the north side, the side that faces Glorious Road. The backyard is fenced and contains a shed. The premises located at 3573 Glorious Road in Columbus, Ohio will hereafter be referred to as the TARGET LOCATION. The TARGET LOCATION is more fully described in Attachment A incorporated herein by reference. A list of the specific items to be seized from the TARGET LOCATION is attached hereto as Attachment B, and Attachment B is incorporated herein by reference.

3. Based upon the information below, I have probable cause to believe that inside the location described in paragraph 2, there is property that constitutes evidence of the commission of a criminal offense; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as a means of committing a criminal offense. Specifically, I have probable cause to believe that within the above mentioned property there is evidence of violations of 21 U.S.C. §§ 841 and 846, Possession with Intent to Distribute and Distribution of Controlled Substance, and Conspiracy to do the same.

4. Based on my training and experience, I am familiar with the methods used by persons involved in the illicit distribution of controlled substances and as a result, know the following:

a. It is common practice for drug traffickers to often maintain residences which are used as "stash houses" or locations for drug storage and distribution, and use "nominees" to obtain telephone service, utility service, and other services to hide the true identity of the owner or person who will use that service.

b. Drug trafficking organizations frequently place managers at the drug stash who are responsible for packaging and keeping track of their inventory, that is, controlled substances that are available for sale. In addition they also are responsible for taking orders from customers and then dispatching runners to deliver the heroin to the customers, thus giving them complete control over the operation.

2

c.   It is common practice for drug traffickers to hide their assets, their addresses, their telephone numbers and cellular services by using other person's names in order to avoid detection by law enforcement officials

d.   It is common practice, that even though these assets are in nominee names, drug traffickers will continue to utilize these assets by exercising dominion and control over them.

e.   It is common for drug traffickers to provide false information to law enforcement officials regarding their identity and the address of their actual residence.

f.   It is common practice that drug traffickers possess large amounts of U.S. Currency in order to finance their ongoing illicit drug business.

g.   It is common practice that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation and distribution of drugs. Drug traffickers commonly front (provide drugs on consignment) to their clients. The books, records, receipts, notes, ledgers, and other documents are kept where the drug traffickers have ready access to them.

h.   That persons involved in drug trafficking conceal from law enforcement in their residences, vehicles, and businesses the following items: drugs, large amounts of currency, financial instruments, jewelry, automobile titles, other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to the acquisition and concealment of large sums of money resulting from drug trafficking activities.

i.   When drug traffickers amass large proceeds from the sale of drugs, they attempt to hide the true source of these profits, otherwise known as laundering the money. To accomplish this, drug traffickers many times utilize banks and/or financial institutions with their attendant services, including but not limited to, cashier's checks, money drafts, and letters of credit. Other entities used to launder drug proceeds include real estate firms and purported legitimate business fronts.

j.   Drug traffickers commonly travel to facilitate their trafficking activities. After purchasing drugs, traffickers commonly transport, or cause to be transported, drugs to areas in which they will be distributed. Common methods of transportation include, but are not limited to, commercial airlines, and rental/private automobiles.

k.   It is common practice that drug traffickers commonly maintain books and similar documents which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization. This information can often be stored in cellular phones in places such as the contacts list.

l.   Drug traffickers often take, or cause to be taken, photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained at the residences and/or businesses of drug traffickers. Photographs such as these can commonly be found and stored in cellular phones.

m.     Drug traffickers commonly have in their possession, (that is on their person, at their residence, and/or their business) weapons, including firearms of various types. Firearms are used to protect and secure a drug trafficker's property which may include, but is not limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. Currency.

n.     Drug traffickers frequently maintain hidden compartments within their residence and vehicles to hide drug trafficking evidence (money, ledgers, drugs, etc.), or hide the evidence in safes.

o.     The exact quantities, prices, dates, and methods of delivery of drugs are seldom discussed in detailed terms over the telephone. For this reason, most telephone conversations regarding drugs are very brief and often in code, understood by the traffickers and designed to mislead or confuse non-participants of the conversations. Drug traffickers make extensive use of cellular phones and text messaging to facilitate contacting one another. The structure of a drug distribution organization usually consists of sources of supply, wholesale distributors, retail distributors, and the ultimate consumers. The wholesale distributors often have more than one source of supply, and likewise the retail distributors often obtain drugs from more than one wholesale distributor. After receiving a quantity of drugs, the source of supply will often move the drugs to a location other than where he/she sells them to the wholesale distributors. The location of the source of supply's so-called "stash house" is generally a well-guarded secret known only to the source of supply and his closest associates. Most of the drugs, as well as diluting and packaging materials and weighing equipment, are usually kept at the "stash house." Only those amounts needed for immediate sale are usually kept at the point of sale.

p.     Evidence of past communication between drug traffickers can be found in saved or deleted text messages, call logs, and other forms of electronic communication occurring over, stored in, or accessed by the cellular phone.

5.     The evidence to be searched for and seized is:

A.     Heroin and any other controlled substances;

B.     Documents and other items tending to show dominion and control over the TARGET LOCATION, including, but not limited to, bills or other business-related documents, correspondence, and photographs;

C.     Documents or other items tending to identify co-conspirators and sources, including, but not limited to, letters, notes, memoranda, photographs, address and phone books, maps, organizers, or lists of names;

D.     Items commonly used to facilitate drug trafficking, such as firearms, ammunition, cellular telephones, pay/owe sheets, packaging materials, "cut", scales, and grinders;

E.    Likely proceeds of drug trafficking, such as U.S. currency and other negotiable instruments; and

F.    Documents and other items tending to establish or hide the whereabouts of proceeds from drug trafficking, such as safes, keys to other locations, and financial records.

6.    The information contained in this Affidavit is largely based upon an investigation conducted by your Affiant and other law enforcement officers. All of the details of the investigation are not included in this Affidavit, only information necessary to establish probable cause that evidence associated with drug trafficking offenses is located at the **TARGET LOCATION**. Unless specifically quoted, the conversations described below are set forth in substance.

## FACTS SUPPORTING PROBABLE CAUSE

7.    In November 2019, DEA Columbus Field Office initiated an investigation into a Mexican heroin trafficking organization believed to be operating in the Columbus, Ohio area.

8.    On November 18, 2019, Your Affiant telephonically debriefed a local DEA confidential source (CS) regarding this trafficking organization. This CS has previously provided information to the DEA which was later corroborated through independent investigation. This CS is considered truthful and reliable. This CS has also been instrumental in two successful DEA investigations over the last 12 months which resulted in the seizure of illegal controlled substances. The CS is receiving monetary compensation from the DEA for the information provided.

9.    According to the CS, he/she was contacted telephonically on November 13, 2019, by an individual who identified himself as "Carlos". According to the CS, in 2017 and while living in the Columbus, Ohio area, he/she had communicated with a group of heroin traffickers from Mexico, at least one of whom identified himself as "Carlos". However, according to the CS, the individual who contacted him/her on November 13, 2019, was not the same individual who the

CS had dealt with previously. The CS believes that the original "Carlos's" organization likely had his/her cellular telephone number and provided it to the new "Carlos".

10.     The CS further advised that Carlos[1] called the CS again on November 15, 2019 and made arrangements to have two of his runners meet with the CS in the Hilltop neighborhood of Columbus. According to the CS, Carlos, while speaking with the CS, could be overheard using another telephone to contact his runners and tell them where to go. The CS then advised that later that day two medium-complexioned males arrived at the CS's location in a silver Chevrolet 4-door sedan with Ohio license plates. The driver, who did not identify himself, advised the CS that an ounce of heroin from Carlos would cost the CS, or one of the CS's associates, $1,050.

11.     According to the CS, Carlos contacted him/her again on Sunday, November 17, 2019, and asked the CS if he/she would help him move multi-ounce quantities of cocaine. Carlos advised the CS that the organization was going to receive a large shipment of cocaine and that he predicted cocaine was going to make a big comeback in Ohio. Carlos instructed the CS to contact him utilizing the cellular telephone number (614) 500-2521 in order to purchase heroin or cocaine from the organization.

12.     Upon learning of the (614) 500-2521 telephone number, DEA issued an administrative subpoena to T-Mobile/Metro PCS (T-Mobile) for subscriber information and learned that such information was not available for that prepaid cellular telephone. T-Mobile provided tolls which revealed that another local telephone number, (614) 619-8307, was in contact with (614) 500-2521. The subscriber for this cellular telephone was listed as Rodolfo CRUZ-GONZALEZ, with an address in Columbus, Ohio.

---

[1] Beginning with Paragraph 8, when referring to the new "Carlos", the affidavit will refer to him as Carlos

13.     On December 3, 2019, at the request of the DEA, the CS contacted Carlos and asked to meet at 263 Clarendon Avenue in Columbus to discuss a future purchase of heroin. Carlos advised that he would send one of his guys to that location. DEA maintained surveillance on Clarendon and observed a silver 2006 Pontiac G6, bearing Ohio license plate HWW6335, arrive and park in close proximity to where the CS had parked. The driver and sole occupant of the vehicle was a heavy-set, medium complexioned male who appeared to be in his late twenties. The CS advised that the driver of the Pontiac had given him/her a free sample of heroin that was contained within a red balloon.

14.     Following this meeting, Your Affiant met with the CS and obtained the sample of heroin which weighed approximately 29.7 grams. According to the CS, the driver of the Pontiac was one of the same individuals Carlos dispatched on November 15, 2019. The driver of the Pontiac on December 3 will hereafter be identified as unknown male 1 (UM1). In November, UM1 was in the passenger seat of the vehicle that was driven by another older and thinner unidentified male.

15.     On January 13, 2020, the CS advised Your Affiant that Carlos was no longer using cellular telephone (614) 500-2521. Carlos advised the CS that his new number for ordering heroin or cocaine was cellular telephone (614) 599-5173.

16.     At the request of DEA, CS made arrangements with Carlos to introduce a DEA undercover agent to Carlos for the purpose of purchasing multi-ounce quantities of heroin and cocaine from Carlos. Following a telephonic introduction made over the new phone in mid-January 2020, Carlos, who introduced himself as "John", advised DEA Special Agent (SA) Bookman, acting in an undercover capacity, to contact him utilizing cellular telephone number (614) 599-5173.

17.    Upon learning of the (614) 599-5173 telephone number, DEA issued an administrative subpoena to T-Mobile for subscriber information and learned that such information was not available for that prepaid cellular telephone. According to T-Mobile, cell service for this telephone number was initiated on December 18, 2019.

18.    On January 14, 2020, Your Affiant sought a state search warrant from Franklin County ordering T-Mobile to provide GPS/Precision Location Information for telephone (614) 599-5173. The information provided by T-Mobile revealed that as of January 14, 2020, and continuing through January 21, 2020, the cellular telephone, (614) 599-5173, was located in the Hilltop neighborhood of Columbus, Ohio. GPS/precision location information provided by T-Mobile, placed cellular telephone (614) 599-5173 within 1000 meters of the cellular telephone's actual location.

19.    On January 21, 2020, at approximately 4:50 a.m., Your Affiant observed a black 2011 Volkswagen Jetta, registered to Rodolfo CRUZ-GONZALEZ, and a dark blue 2011 Dodge Journey, registered to Lucia PORTILLO, parked in the driveway of the TARGET LOCATION. This was within the area that was designated by the GPS/precision location information provided by T-Mobile.

20.    In response to a DEA administrative subpoena, T-Mobile also provided tolls for cellular telephone (614) 500-2521, the cellular telephone previously utilized by the organization to take orders for heroin (see paragraph 10). These tolls revealed that telephone number (614) 619-8307 was in contact with (614) 500-2521. The subscriber for cellular telephone (614) 619-8307 was listed as Rodolfo CRUZ-GONZALEZ. Subsequent investigation revealed that CRUZ was first identified by the DEA in 2015 as a result of an unrelated DEA investigation as a suspected heroin trafficker. CRUZ has no known criminal history

8

21.     On January 21, 2020, DEA utilized a court-authorized cell-site simulator to locate cellular telephone (614) 599-5173.  At approximately 4:30 a.m., the simulator located the device inside the TARGET LOCATION.

22.     Continuing on January 21, 2020, DEA Columbus District Office formulated plans for SA Bookman, acting in an undercover capacity, to purchase two ounces of heroin for $2,100 in official advanced funds (OAF) from Carlos's heroin trafficking organization.

23.     At approximately 9:30 a.m., DEA agents established surveillance of the TARGET LOCATION.  DEA SA Caplin observed the black 2011 Volkswagen Jetta, registered to Rodolfo CRUZ-GONZALEZ and the dark blue 2011 Dodge Journey, registered to Lucia PORTILLO, parked in the driveway of the TARGET LOCATION.  SA Caplin also observed a third vehicle, a silver 2006 Pontiac G6, bearing an Ohio license plate, parked in the driveway behind the Jetta. The Pontiac G6 was not at the TARGET LOCATION earlier that morning.  The Pontiac G6 was the same vehicle utilized on December 3, 2019, to deliver a free sample of heroin to the CS.

24.     A short time later, SA Caplin observed a young medium-complexioned male with short black hair, and wearing a white t-shirt and dark pants, exit the TARGET LOCATION, walk over to the silver Pontiac, and open the driver door.  The unidentified male appeared to place something inside the car or take something out of the car before then walking back inside the house.

25.     At approximately 11:09 a.m., after a series of text messages to and from cellular telephone (614) 599-5173, SA Bookman and "John" agreed to a price of $2,100 for two ounces of heroin.  SA Bookman agreed to meet "John's" runner at the AutoZone located at 3821 West Broad Street in Columbus. A few minutes later, SA Caplin observed a young medium-complexioned male with short black hair and wearing a black watch cap and a gray hooded sweatshirt, exit the

TARGET LOCATION carrying what appeared to be a brown plastic grocery bag. According to SA Caplin, the individual appeared to be the same individual whom he had observed come out of the house and lean into the Pontiac earlier that morning. SA Caplin subsequently observed that male get into the silver Pontiac G6 and depart the area. This unidentified male will be referred to as UM2.

26. Continuing on the same date, at approximately 11:20 a.m., DEA officers established surveillance at the AutoZone located at 3821 West Broad Street. Shortly after, "John" advised SA Bookman that UM2 was at the meet location. UM2 did not arrive in the silver Pontiac until approximately fifteen minutes later. DEA officers observed the Pontiac G6 drive over to and park at the Speedway gas station located at 3605 West Broad Street, Columbus, just east of the AutoZone where SA Bookman was parked. The Pontiac then departed the Speedway gas station and UM2 drove over to the Chuck E. Cheese Childrens Amusement Center located at 3631 Soldano Boulevard, Columbus. Moments later, "John" called and instructed SA Bookman to meet UM2 at the Chuck E. Cheese location.

27. At approximately 12:21 p.m., DEA officers observed SA Bookman pull into the Chuck E. Cheese parking lot. Shortly after, UM2 exited his vehicle, walked over to SA Bookman's vehicle and opened SA Bookman's front passenger door and entered the car. According to SA Bookman, UM2 gave him approximately 90 gross grams of a brown powder substance purported to be heroin that was contained in multiple balloons of different colors and further contained in a clear plastic sandwich bag in exchange for the $2,100.00 in OAF. SA Bookman conducted a presumptive field test from a sample taken from the heroin that was purchased from the driver of the silver Pontiac G6. The sample tested positive for heroin.

28.     The GPS/precision location information that was provided by T-Mobile for (614) 599-5173 confirmed that the phone was consistently at the same location from approximately 4:30 a.m. until the conclusion of the controlled purchase later that day.  As noted in paragraph 20, at approximately 4:30 a.m., the cell site simulator placed the cellular telephone (614) 599-5173 inside the TARGET LOCATION.  Based upon the facts set forth above, as well as my training and experience, Your Affiant believes that the TARGET LOCATION is utilized by the drug trafficking organization as a stash house where the manager, Carlos/"John", is located and is responsible for taking orders from customers and then dispatching runners from that location to deliver the heroin to the customers, thus giving Carlos/"John" complete control over the operation.

## CONCLUSION

29.     Based upon my training and experience, Your Affiant believes the TARGET LOCATION will contain property that constitutes evidence of the commission of a criminal offense; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as a means of committing a criminal offense.  Specifically, I have probable cause to believe that within the above mentioned property there is evidence of violations of 21U.S.C. §§ 841 and 846, Possession with Intent to Distribute and Distribution of Controlled Substance, and Conspiracy to do the same.  I respectfully request that the court issue a search warrant for the TARGET LOCATION, further described in

//

//

//

//

//

Attachment A, and the property described in Attachment B. Investigators request that this warrant

be sealed in order to better protect the source of information.


CHRISTOPHER CADOGAN
Special Agent
Drug Enforcement Administration

S

UBSCRIBED AND SWORN TO BEFORE ME,
this _____ 10 th day of February, 2020.

KIMBERLY A. JOLSON
United States Magistrate Judge

12

**ATTACHMENT A**

The TARGET LOCATION is the premises identified as 3573 Glorious Road, Columbus, Ohio 43204. The TARGET LOCATION is a yellow single-story, single family residence, located on the south side of Glorious Road, one house removed from the intersection of Josephine Avenue and Glorious Road. The front door of the house faces north. The building is identified by the numerals "3573" attached to the building on the north side, the side that faces Glorious Road. The backyard is fenced and contains a shed.

**ATTACHMENT B**

The evidence to be searched for and seized is:

A. Heroin and any other controlled substances;

B. Documents and other items tending to show dominion and control over the TARGET LOCATION, including, but not limited to, bills or other business-related documents, correspondence, and photographs;

C. Documents or other items tending to identify co-conspirators and sources, including, but not limited to, letters, notes, memoranda, photographs, address and phone books, maps, organizers, or lists of names;

D. Items commonly used to facilitate drug trafficking, such as firearms, ammunition, cellular telephones, pay/owe sheets, packaging materials, "cut", scales, and grinders;

E. Likely proceeds of drug trafficking, such as U.S. currency and other negotiable instruments; and

F. Documents and other items tending to establish or hide the whereabouts of proceeds from drug trafficking, such as safes, keys to other locations, and financial records.